[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 10, 11, 12, 13, 31, and August 1, 2, and 10, 2001, the court heard evidence on these consolidated cases. In case d.n. CV 01-75354, Puliafico's Restaurant and Banquet Facility, LLC (Puliafico's) sues Sun Valley Resorts Clubhouse, Inc. and Robert Minor for an alleged lockout and detainer under General Statutes § 42a-43ff and seeks a temporary and permanent injunction, a writ of restitution as to personal property, and money damages. In case d.n. CV 01 75084, Clubhouse, Inc. seeks a prejudgment remedy against Puliafico's and its owners, Daniel Pike and Michelle March. The court finds the following facts.
Daniel Pike and Michelle March are siblings who as children spent summers at the Sun Valley Campground in Stafford. Robert Minor owns the land comprising the resort and is the sole or predominant shareholder of the various corporate entities which conduct business at the resort, including campsite sales and related activities, restaurant, banquet, and pavilion facilities. Robert Minor's children grew up contemporaneously with Pike and March and were friendly with each other's families throughout their youth.
Pike became an executive chef and worked for numerous restaurants in Connecticut. In January 2000, Pike and Michael Minor had a chance meeting, and the ensuing conservation led to consideration of having Pike ply his culinary talents and food service expertise at the restaurant and banquet halls at the Sun Valley resort. Subsequent discussions allowed the parties to conceive of a joint venture along these lines. It was agreed that Pike would enter into a partnership with Clubhouse, Inc., the corporation which then operated the Sun Valley restaurant and banquet business. Clubhouse, Inc. leased from Robert Minor the building which contained the restaurant, a lounge and bar area, and offices from which the resort's other enterprises operated. As part of the proposed joint venture, Clubhouse, Inc. was to sublease the restaurant, bar, and banquet facilities to the new partnership.
While the details of the venture were still being sorted out, the Sun Valley restaurant employed Pike for a salary. Proposals and counter proposals were exchanged without reaching a definitive, written agreement. Pike wanted his sister, March, to be part of the venture and assist in the operation of the restaurant and banquet business. Despite the absence of a final, written contract, on May 1, 2000, the parties CT Page 16193 proceeded to open for business as if such an accord had been attained.
Pike and March formed their own LLC, known as Puliafico's Restaurant and Banquet Facility, LLC.
Pike designed and supervised renovation of the restaurant kitchen. This renovation was paid for by Clubhouse, Inc., and most of the labor was provided by the Minor family members and Clubhouse, Inc. employees. New equipment and fixtures were purchased and installed, including new banquet chairs. Pike created a new menu, and advertisement under the name Puliafico's was procured.
Puliafico's assumed the banquet work which had been booked previously by Clubhouse, Inc. Clubhouse, Inc. retained the deposits for these bookings while the balances were paid to Puliafico's. Clubhouse, Inc. employees connected to the restaurant and banquet businesses became employees of Puliafico's. Puliafico's and Clubhouse, Inc. shared certain phone lines. Provisions were purchased using Clubhouse, Inc. credit lines, but these purchases were paid from Puliafico's bank accounts. Supplies of food and liquor on hand on May 1, 2000, which had been bought by Clubhouse, Inc., were utilized by Puliafico's. Utility bills were invoiced to Clubhouse, Inc. but were supposed to be paid by Puliafico's.
Predictably, the inability to reach a final agreement bred distrust and animosity between the two factions. Especially nettlesome was the lack of a written lease. The parties agreed that Clubhouse, Inc. was owed rent by Puliafico's but no amount was established. Eventually, the parties concurred upon a rent figure of $3800 per month.
From May 1, 2000 to January 1, 2001, Puliafico's paid only $5,500 toward rent. On January 5, 2001, the Minor family notified Puliafico's that unless the balance of $32,500 for unpaid rent was paid by January 31, 2001, "Puliafico's will no longer we be welcome to conduct business on this premises."
During the months preceding this notice, Pike became disenchanted with the venture at Sun Valley resort and had expressed to an acquaintance an intention to move to South Carolina to open a restaurant there.
On January 31, 2001, Puliafico's failed to pay the back rent. Despite last minute efforts to hammer out a resolution, Pike and March decided to abandon the venture. They arranged for a crew of friends to drive three vehicles, including a box truck, to the premises to facilitate moving out. The box truck arrived in the early afternoon, and Pike had his crew prepare to load the newly acquired banquet chairs and a television set onto the truck. Members of the Minor family spotted this activity and CT Page 16194 protested that this property belonged to Clubhouse, Inc. The Connecticut State Police were summoned. Trooper Mazza responded to the scene, spoke with the disputants, and left when Pike consented to leave the chairs behind.
Around 4 p.m., another truck arrived and backed up near the lounge entrance. The occupants of the truck were Pike, March, and three friends. The Minors decided to surveil the exits to ensure that Pike and March only removed property to which the Minors made no claim. Because the number of exits exceeded the number of family members, Michel Minor had one door in the kitchen area and another door locked to prevent removal of items through those exits. Eight other exits remained unlocked, and members of the public and Puliafico's staff were free to come and go at will.
In reaction to the locking of the two doors, March called the state police around 5 p.m. Trooper Mazza, and other officers arrived as a result of this second call for assistance. Discussions among the troopers and the parties produced a resolution allowing Pike and March to remove Puliafico's records and other uncontested items.
By agreement with Matthew Minor, March and her mother returned to Sun Valley the following day, February 1, 2001, and they retrieved several additional items. Matthew Minor unscrewed the banquet office door and untethered other doors which had been secured after Pike and March left the premises the evening before so that March might obtain these items.
 Case d.n. CV01-75354. Entry and Detainer.
While the testimony on this point was conflicting, the court finds that no lockout under § 47a-43 occurred. Pike and March voluntarily and intentionally abandoned the Sun Valley premises on January 31, 2001. Pike had recently voiced his desire to move to South Carolina. Pike and March arranged for three moving trucks to drive to the building to accomplish this move and without notice to the Minor family. The locking of the two exists was done, not to lock the Puliafico's staff out, but rather to prevent the absconding by Pike and March with material which the Minor's claimed belonged to Clubhouse, Inc. Pike and March were motivated to abandon the premises because they were unable to pay the $32,500 owed for back rent or work out an alternative with Clubhouse, Inc.
Entry and detainer is an action by which one in possession of land, who has been wrongfully deprived of that possession, may be restored to enjoyment of it, Murphy, Inc. v. Remodeling, Etc., Inc., 62 Conn. App. 517,520 (2001). One who voluntarily surrenders possession lacks assertion of dominion over the premises sufficient to prevail in such an action, CT Page 16195Barszck v. Solnit, 46 Conn. App. 112, 117 (1997). This is true even where the surrender was precipitated by the specter of eviction, Id.
The owners of Puliafico's voluntarily relinquished possession of the premises on January 31, 2001. Consequently, no violation of § 47a-43
occurred. Judgment enters for the defendants in case d.n. CV 01-75354.
 Case d.n. CV 01-75084
Upon consideration of all the evidence, the court finds that there exists probable cause to believe that a judgment in the amount of $40,000 will be obtained by the Clubhouse, Inc. This amount reflects the $32,500 of unpaid rent determined above plus interest. Based on the findings noted above, the court also concludes that no defense, set off, or counterclaim will be found to diminish this amount.
The court further finds that the parties never reached a definitive agreement as to the manner in which the joint venture would operate nor as to how profits or losses would be distributed or shared. These issues were still in negotiations throughout the tenure of Puliafico's at Sun Valley. The parties were apparently satisfied to conduct business under this cloud, and the court concludes that neither side has any provable claim to reimbursement from the other except for the unpaid rent.
Pursuant to General Statutes § 52-278d, a prejudgment remedy issues on behalf of Clubhouse, Inc. in the amount of $40,000.
Sferrazza, J.